J. Kirby McDonough
SPENCER FANE LLP
California Bar No. 275705
201 N. Franklin St., Suite 2150
Tampa, FL 33602
Telephone: 813-424-3501
kmcdonough@spencerfane.com

*Attorney for Defendant*
*Rocket Mortgage, LLC*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE HICKCOX,<br><br>Plaintiff,<br><br>v.<br><br>ROCKET MORTGAGE, LLC,<br><br>Defendant | **Case No. 2:22-CV-00437-TLN-KJN**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ROCKET MORTGAGE'S COUNTER-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Date: June 1, 2023**<br>**Time: 2:00 p.m.**<br>**Court: Hon. Troy J. Nunley, Courtroom 2** |

**TABLE OF CONTENTS**

Introduction ................................................................................................................ 1

Undisputed Facts .......................................................................................................... 7

**I. Standard**……………………………………………………………………..11

**II. Hickcox Lacks Article III Standing** .................................................................. 11

i. Hickcox was Made Whole by ASIC ...................................................................... 12

ii. California Fair Plan Would Not Have Covered the Loss ...................................... 13

**III. Hickcox Cannot State a Claim Under RESPA or CA Financial Code §50505**............... 14

i. Hickcox Did Not Suffer Actual Damages as a Result of RESPA……………………………..15

ii. Rocket Mortgage did not Admit to a Covered Loss……………………………………………16

iii. Rocket Mortgage did not Cause the Second Lapse in Coverage ............................................. 17

iv. Plaintiff's Complaint is Devoid of Allegations Surrounding 12 USC 2605(K) ...................... 17

v. There is No Claim for Violations of California Financial Code §50505………………………18

**IV. Plaintiff Failed to State a Claim for Breach of Fiduciary Duty**…………………………18

**V. Conclusion**.................................................................................................... 18

PH 1498106.1

**TABLE OF Authorities**

**PAGE(S)**

**CASES**

*Trans Union LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) …………………………………11

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)…………...11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)………………………………………………………………………………….. 11, 13

*Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)……………………………………………………………………………13

*Morris v. Allstate Ins. Co.* (C.D. Cal. 2014) 16 F.Supp.3d 1095, 1102…………………………13

*Hueso v. Select Portfolio Servicing, Inc.* (S.D. Cal. 2021) 527 F.Supp.3d 1210, 1223………….15

*Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010)………….15

*Read v. Cenlar FSB* (C.D. Cal., Sept. 30, 2021, No. EDCV21504JGBSPX) 2021 WL 6618659………………………………………………………………………………. 15

*Moore v. Wells Fargo Bank, N.A.,* 908 F.3d 1050, 1058 (7th Cir. 2018)………………………..15

*Second Measure, Inc. v. Kim* (N.D. Cal. 2015) 143 F.Supp.3d 961, 979………………………..18

**STATUTES**

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, § 1098, 124 Stat. 1376, 2104 (2010)……………………………………………………………………………14

12 C.F.R. §§ 1024.17……………………………………………………………………………14

See, 12 C.F.R. § 1024.17(k)……………………………………………………………………..15

12 C.F.R. §§ 1024.34…………………………………………………………………………….14

12 U.S.C. §2605(k)………………………………………………………………………………17

PH 1498106.1

## **INTRODUCTION**

Plaintiff Nicole Hickcox ("Plaintiff" and/or "Hickcox") took out a refinance loan with Rocket Mortgage LLC ("Rocket Mortgage[1]") that closed in October 2019. Per the terms of her Deed of Trust ("DOT") Hickcox was required to obtain hazard insurance. Additionally, her DOT required Hickcox to escrow taxes and insurance. An impound account was created, and when taxes and insurance came due, Rocket Mortgage would be tasked with paying polices from Hickcox's impound account.

When Hickcox's loan was in the origination phase, Rocket Mortgage required proof of hazard insurance. Because Hickcox's property was in a high-risk area for fires, she could not obtain a traditional hazard policy. Instead, she obtained a policy through California Fair Plan, but also obtained a difference in conditions policy through CSAA. AAA is the broker for both policies. Hickcox's broker provided proof of both policies, but they were not boarded into Rocket Mortgage's servicing platform correctly. CSAA was entered as the top line policy, and California Fair Plan was not.

Rocket Mortgage utilizes a third-party vendor to assist with their insurance issues. American Security Insurance Corporation ("ASIC" and/or "Assurant") is tasked with receiving notices, paying for renewals, and processing claims among other insurance duties. However, ASIC follows the information that is received by Rocket Mortgage when a loan is boarded and are responsible for only ensuring the top line policies are paid.

At closing, Rocket Mortgage mistakenly sent all hazard insurance funds to the broker at AAA. AAA applied the funds against the CSAA difference in conditions policy but refunded the California Fair Plan money to Hickcox. Thereafter, California Fair Plan sent several notices regarding payment, but they were ignored because California Fair Plan was not listed as a top line policy. Eventually the policy lapsed. It's important to note that Hickcox was receiving these same notices. She also had an obligation to let Rocket Mortgage know that her hazard insurance was not paid.

---

[1] Rocket Mortgage LLC was formerly known as Quicken Loans Inc. Whenever Rocket Mortgage is used in this Motion, it also refers to Quicken Loans Inc.

– 4 –

In March of 2020, Hickcox allegedly suffered a loss to an exterior deck of her home. She waited nearly two weeks to contact her insurance broker. She then submitted a claim to CSAA advising that the loss was due to weight of snow. CSAA inspected the property, with Hickcox's assistance, and came to the same conclusion. However, her CSAA policy did not cover loss due to weight of snow. Thereafter, and three month's after the loss, Hickcox called Rocket Mortgage and advised that her deck was damaged, and that her California Fair Plan policy lapsed due to non-payment. Importantly, Hickcox never mentioned snow, and claimed that it was due to wind.

Rocket Mortgage notified its vendor ASIC/Assurant who agreed to set up an insurance policy, applied retroactively, to investigate and adjust the loss. Assurant retained an outside adjuster to meet with Hickcox and inspect the property. Upon the adjuster's field observation, he determined that wind caused a tree to fall on her deck. The claim was adjusted and Hickcox received a check for a little over $5,000 once the deductible was applied.

Thereafter, Hickcox set up a new California Fair Plan policy through her broker at AAA, and everything appeared to be resolved. A year went by, but Rocket Mortgage did not receive renewal notices or proof of insurance. Upon investigation, when Hickcox's broker set up the new policy, she failed to enter the correct mortgagee clause, and notices were getting sent to the wrong address. In fact, California Fair Plan was sending notices to Hickcox advising that the renewal notices were being rejected, and that her plan would be cancelled, yet she ignored the correspondence. Likewise, Rocket Mortgage was sending notices to Hickcox advising that it did not have proof of hazard insurance, and it would have to purchase a lender policy, which it eventually did. Hickcox ignored those as well.

Despite never complaining to Rocket Mortgage about the resolution of her insurance claim, and ignoring correspondence regarding failure to obtain hazard insurance, Hickcox has filed this instant lawsuit essentially claiming that because her insurance lapsed back in 2020, she was not fully compensated for her deck. She also claims that the subsequent lapse of her California Fair Plan was due to Rocket Mortgage, which is simply not true.

As discussed more thoroughly below, Plaintiff's claims fail for several reasons. First, Hickcox lacks Article III standing. Claiming that, had California Fair Plan been in place at the

– 5 –

time of her loss, she would have received a larger settlement, is hypothetical at best. First, California Fair Plan is admittedly a bare bones policy, and is insurance of last resort. Second, ASIC/Assurant policy retroactively adjusted her loss and paid her a settlement. Third, California Fair Plan would not have covered her loss. Under a named peril policy, the insured has the obligation to prove that the loss was caused by the named peril. Here, Hickcox originally claimed that it was caused by weight of snow. After she was denied her claim, she took the position that it must be something else; wind. However, her statements to both AAA, to Rocket Mortgage, and to ASIC/Assurant, was that she did not know what caused the loss. She waited two weeks to contact her broker, and three months to contact Rocket Mortgage. She didn't take any pictures, create a log of damages, or preserve any evidence that could prove a loss by a named peril.

Hickcox takes the position that a windstorm must have caused it, but there is no evidence of windstorm. In fact, local weather reports show that Pollock Pines, California was blanketed with snow and rain when her alleged loss occurred. This would corroborate her original statements when she first submitted a claim. Furthermore, a California federal court has held when a policy does not define "windstorm", it must be given its ordinary dictionary meaning. That is, strong wind, with little to no precipitation. Here, there was record precipitation, and by definition this could not be a windstorm. The mere procedural violation of not paying the Fair Plan policy does not create an actual concrete harm. Especially where a policy was set up, that adjusted Hickcox claim, and paid her money.

Likewise, there can be no claim for RESPA or Breach of Fiduciary Duty because each cause of action requires damages. Plaintiff was actually enriched by her California Fair Plan lapsing. The lender policy that was retroactively applied covered windstorm, weight of snow and falling objects. Under the Fair Plan policy, only *direct* loss from windstorm is covered. Additionally, her policy was less than her Fair Plan policy. She did not come out of pocket any money. More importantly, under a named peril policy, the insured is tasked with proving the loss was caused by a named peril. Hickcox repeatedly stated that she did not know the cause of the loss, even three months after it occurred. It would be impossible for her to prove the loss now. Especially since she razed the deck before any inspection occurred – other than CSAA  that said it

was weight of snow – and she took no pictures of the loss. No expert could recreate a scenario where Hickcox could meet her burden of proof without pure speculation and conjecture.

Last Hickcox's second lapse of her California Fair Plan policy also did not create a cause of action. Her own broker entered Rocket Mortgage's address incorrectly and it never received notice. Not receiving a renewal notice is a named exception to RESPA and its timely escrow payment requirements. Second, Rocket Mortgage and California Fair Plan were sending Hickcox notices repeatedly regarding her insurance and she ignored the same.

Under the unique facts of this case, Defendant Rocket Mortgage is entitled to Summary Judgment in its favor.

**UNDISPUTED FACTS**

On October 15, 2019, Hickcox executed a promissory note in favor of Rocket Mortgage f/k/a Quicken Loans Inc., in the amount of $171,762.00 (the "**Note**") to refinance real property located at 4371 Park Woods Dr., Pollock Pines, CA 95726 (the "**Property**"). (SUF 1[2]). On October 15, 2019, Hickcox executed and granted a Deed of Trust in favor of Rocket Mortgage f/k/a Quicken Loans Inc., on the Property to secure payment for the Note. (the "**Deed of Trust**"). Said Deed of Trust was recorded with the County Recorder of El Dorado County, California, No. 20199004522700018." (The Note and Deed of Trust will be collectively referred to as the "**Refinance Loan**"). (SUF 2). Rocket Mortgage is the originator and servicer of Hickcox's Refinance Loan. (SUF 3).

Hickcox's Deed of Trust requires her to maintain hazard insurance with "extended coverage". (SUF 4). Paragraph three (3) of the Deed of Trust requires Hickcox to pay Rocket Mortgage for taxes and insurance to be held in escrow, and Rocket Mortgage is tasked with paying the taxes and insurance premiums as they come due. (SUF 5). Hickcox's Deed of Trust requires her to promptly furnish to Rocket Mortgage all notices of amounts to be paid for insurance and taxes. (SUF 6). In July of 2019, Prior to closing the Refinance Loan, Hickcox obtained two difference insurance policies: one from California Fair Plan and one from CSAA.

---

[2] References are to Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment.

PH 1498106.1

(SUF 7). Hickcox's broker, Patricia Wilburn at AAA, completed the application and submitted it to California Fair Plan. (SUF 8). In Hickcox's application, Ms. Wilburn advised California Fair Plan that the Mortgagee Clause was:

> Quicken Loans
> 1050 Woodward Ave., Detroit, MI.

(SUF 9). California Fair Plan relies on the broker exclusively to provide that information. (SUF 10). As of August 12, 2019, Hickcox had a policy in force from California Fair Plan with a total annual premium of $1,445.00. (SUF 11). On August 21, 2019, an Insurance Specialist from Rocket Mortgage sent an email to Hickcox's insurance broker, Patricia Wilburn, at AAA requesting a copy of the declaration page and advised that the mortgagee clause was:

> Quicken Loans Inc. ISAOA
> PO Box 202070
> Florence, SC 29502

(SUF 12). On August 22, 2019, Ms. Wilburn submitted a change request to California Fair Plan to have Rocket Mortgage's mortgagee clause updated to the Florence, South Carolina address. (SUF 13). When Rocket Mortgage originated the Refinance Loan, Hickcox's CSAA policy was boarded into Rocket Mortgage's servicing platform as the top line policy. (SUF 14). As such, the servicing platform only ensured that the CSAA policy was timely paid as the designated top line policy. (SUF 15).

Rocket Mortgage handles the initial payment of hazard insurance at closing. Thereafter, it utilizes a third-party vendor, American Security Insurance Corporation ("**ASIC**") a/k/a **"Assurant"** to handle a myriad of insurance related tasks including customer service, receipt and mailing of notices including renewal notices, and payment of insurance premiums from Rocket Mortgage impound accounts, among other tasks. (SUF 16). At closing, the full amount of the hazard insurance was timely sent to AAA. However, the CSAA payment should have gone to AAA, and the other payment directly to California Fair Plan. (SUF 17). Despite receiving notices from AAA prior to closing that the California Fair Plan premium was not paid, Rocket Mortgage's origination team believed that it would get funded at closing. (SUF 18). Hickcox and her broker, AAA, also received the notices of payment due, and cancellation notices, but never

– 8 –

PH 1498106.1

forwarded along to Rocket Mortgage. (SUF 19). Instead of AAA forwarding Rocket Mortgage's timely payment to California Fair Plan, it issued a refund directly to Hickcox without notifying Rocket Mortgage. (SUF 20).

On March 16, 2020, Hickcox suffered an allege loss to an exterior deck of her home. (SUF 21). Nearly two weeks later, Hickcox decided to first report the alleged loss to her insurance broker with AAA. (SUF 22). Hickcox originally claimed that her deck collapsed due to weight of snow. (SUF 23). On March 16, 2020, Pollock Pines, California, in fact was hit with record snow fall and rain, as heavy storms pummeled the area. (SUF 24). On April 27, 2020, Hickcox was notified by AAA that after conducting a virtual inspection, with her assistance, it was determined that the damage to her deck was caused by weight of snow and was not covered. (SUF 25). That same day, Hickcox contacted Patricia Wilburn with AAA admitted to that she assumed that the loss was from weight of snow, but now that it wasn't covered, she wanted to change her story and claim that it could have been caused by wind. (SUF 26). Hickcox followed up with another email stating that she simply did not know what caused the deck to fall. (SUF 27).

On June 9, 2020, nearly three months after Hickcox's alleged loss, she contacted Rocket Mortgage for the first time and advised that she suffered a loss to her deck and that her California Fair Plan policy had lapsed due to non-payment. (SUF 28). Rocket Mortgage forwarded Hickcox's information to ASIC/Assurant, its third-party insurance vendor, to research the issue. (SUF 29). On August 3, 2020, Hickcox called back to Rocket Mortgage, and requested to speak with a supervisor.  Also on the call was Ryan Miller with ASIC. During the call Hickcox explained the loss to her deck, and that her policy had lapsed. (SUF 30). During the call ASIC/Assurant was going to see if they could get permission to instant issue a policy to retroactively cover the loss, and Hickcox agreed to this plan. (SUF 31). Importantly, Hickcox reiterated that she still had no idea exactly what caused her deck to become damaged. (SUF 32). Thereafter, Rocket Mortgage submitted an uninsured claim on her behalf, and a lender policy was established to retroactively investigate her claim and cover the loss. (SUF 33). Hickcox was an additional insured on the policy. (SUF 34).

– 9 –

When establishing the policy, Rocket Mortgage passed along the information that Hickcox provided to Rocket Mortgage. She stated to both Rocket Mortgage and ASIC that there was a wind loss. (SUF 35). After the ASIC policy was established it sent a field inspector to thoroughly investigate the loss, and he determined – based on statements from Hickcox – that wind caused a tree to fall on her deck. (SUF 36). Hickcox only claimed damage to her deck and did not mention interior damage or damage to personal property. (SUF 37). ASIC's adjuster issued a report, which included pictures, and determined that, based on his field observations and statements from Hickcox, that wind caused a tree to fall on her deck, and he recommended payment. (SUF 38). Rocket Mortgage was not involved with adjusting the loss, inspecting the claim or negotiating a claim with Hickcox. (SUF 39).

In October 2020, after her claim was handled by ASIC, Hickcox set up a new California Fair Plan policy, and the lender policy was cancelled. (SUF 40). Hickcox's broker, Patricia Wilburn at AAA, sent in the application on Hickcox's behalf and copy and pasted the information from the prior application. However, she did not update the mortgagee clause despite Rocket Mortgage previously advising of their Florence, South Carolina address. (SUF 41).

On April 4, 2021, Rocket Mortgage received a check from ASIC for Hickcox's claim in the amount of $5,170.33 made payable to Quicken Loans LLC and Nicole Hickcox. The funds were provided to Hickcox. (SUF 42). Throughout the remainder of 2020 and into 2021 Hickcox's Fair Plan policy was in place. But on September 27, 2021, and again on November 1, 2021, Rocket Mortgage sent notices to Hickcox advising her that her hazard insurance had expired, and it needed evidence of coverage, or it would purchase a policy. (SUF 43). Because Hickcox's broker failed to enter the correct mortgagee clause in the application, California Fair Plan's notices were getting rejected, and her Fair Plan policy was eventually cancelled. (SUF 44). In fact, California Fair Plan sent notices directly to Hickcox advising her that the renewal notices were being rejected and asked her to double check the mortgagee clause address, to no avail. (SUF 45). Hickcox, and her attorney, knew that AAA had set up her new policy utilizing the wrong mortgagee clause prior to filing this lawsuit yet continue to maintain the frivolous allegations that Rocket Mortgage allowed her policy to lapse again. (SUF 46). On December 13,

PH 1498106.1

2021, Rocket Mortgage sent to Hickcox a Notice of Lender-Placed Insurance and advised that despite the two prior notices it did not have proof of hazard insurance and purchased a plan on her behalf. (SUF 47).

## I.  Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56.

## II.  Hickcox Lacks Article III standing

The Supreme Court recently put it: "No concrete harm, no standing." *Trans Union LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). A plaintiff – even with a complete statutory cause of action – cannot sue in federal court without showing "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id*. at 2206. "For standing purposes, therefore, an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id*. at 2205.  The Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (citations omitted). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *Id.* at 2203.  "[S]tanding consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id*. at 339, 136 S.Ct. 1540, *quoting Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (1992).

PH 1498106.1

**i.**    **Hickcox Was Made Whole by ASIC.**

Hickcox claims that she was injured because "had the [California Fair Plan] policy been in force, the loss would have been covered and all coverages under the policy would have been available to Hickcox. (ECF. 1, ¶15). But this statement overlooks what happened after her California Fair Plan policy lapsed. Rocket Mortgage set up an insurance policy through its third-party vendor, ASIC, who investigated and retroactively adjusted her loss. In fact, the policy that was put in place was $239 less than the California Fair Plan policy. When the payment at origination was mistakenly sent to AAA, they refunded it to Hickcox, and she admitted to depositing it. She still had to pay for insurance per the terms of her Mortgage, and therefore Rocket Mortgage was permitted to pay for the ASIC/Assurant policy out of her escrow account. Nothing allowed Hickcox to have a free insurance policy.

Although she claims that many items were not covered under the ASIC policy, she never advised Rocket Mortgage or ASIC/Assurant that there was a loss to personal property, interior damage, or any other kind of loss other than her deck. Obviously for purposes of this lawsuit she claims additional damages, but she doesn't provide any supporting evidence. She waited two weeks to notify her insurance broker, and waited three (3) months to notify her lender, despite clear obligations for her to do that in her Deed of Trust. Importantly, she never advised Rocket Mortgage of any other type of loss. And when ASIC's adjuster met her at the property, she advised that there was no personal property loss or interior damage.

Importantly, Hickcox never notified Rocket Mortgage that the amount of settlement funds was insufficient. She agreed to the plan of setting up an insurance policy to retroactively adjust her loss. She received the funds and deposited them. Thereafter, she set up a new California Fair Plan policy. And California Fair Plan is very adamant that you cannot set up a new policy if there is pre-existing damage or an unresolved claim. *See*, Pierce Depo., p. 34, ll. 8-11; p. 71, ll. 13-20. In fact, her latest attempt to set up a policy was denied because she now claims pre-existing damage. But when she set up her new policy in the fall of 2020, months after the alleged loss, she didn't claim pre-existing damage because her claim was adjusted, and she was satisfied. Moreover, if she has a problem with the amount of money that was paid on her loss, then she

- 12 -

should take that up with ASIC. To establish article III standing, "the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-561, 112 S.Ct. 2130 (1992), citing *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). ASIC is not before the Court, and Hickcox lacks standing to bring a claim against Rocket Mortgage related to the amount of settlement funds she was paid for her loss. Hickcox is attempting to circumvent the appraisal process, and dispute the actual amount paid, and instead looks to pursue Rocket Mortgage under the guise of a RESPA claim. But her alleged injuries are hypothetical at best, and she lacks any evidence to establish her burden of proof.

**ii.    California Fair Plan Would Not Have Covered the Loss.**

For Hickcox to suffer an injury in fact, that could be redressed by this Court, she would have to show that had the Fair Plan policy not lapsed, she would have received a better result. There mere procedural violation of Rocket Mortgage sending the insurance funds to AAA instead of California Fair Plan does not provide standing without a concrete injury. Hickcox's California Fair Plan policy covered *direct* loss from windstorm. Windstorm was not defined in the policy. Because the policy does not define the term "windstorm," the Court shall ascertain its meaning by reference to a dictionary. *Morris v. Allstate Ins. Co.* (C.D. Cal. 2014) 16 F.Supp.3d 1095, 1102. (citations omitted). "Dictionaries define the term 'windstorm' as a storm with high winds or violent gusts with little or no rain." *See* http://www. thefreedictionary.com/windstorm (collecting dictionary definitions of "windstorm" as follows: "a storm with high winds but little or no rain," American Heritage Dictionary; "a storm consisting of violent winds," Collins English Dictionary; "a storm with heavy wind but little or no precipitation," Webster's College Dictionary; a "storm with high winds or violent gusts but little or no rain," American Heritage Science Dictionary). *Id*. at 1102.

"Under a "named perils" policy… the insured has the burden of proving that the loss was caused by a specifically enumerated peril." Id. (collecting cases). At the bedrock of the litigation, Hickcox claims that her loss was caused by windstorm, but she has absolutely no evidence of that

- 13 -

happening. In fact, all of the evidence points to very high precipitation and her own admissions of heave snow and ran. There is no possible way, that the loss was the result of a windstorm, and therefor would not have been covered had her Fair Plan policy been active. She asserted in her initial claim to CSAA that the loss was due to weight of snow. Her difference in conditions carrier determined the same result, with the assistance of Hickcox. She even admits to her broker at AAA that she thought it was weight of snow at the time of the loss. The weather reports and articles from local newspaper support that claim. The only evidence of a wind loss is her telling the ASIC outside adjuster that wind knocked over a tree and fell on her deck. But that would be an indirect loss, not direct loss, to her deck. That still would not have been covered by California Fair Plan. But her ASIC policy covered wind, falling objects, and weight of snow.

Importantly, she told her broker at AAA, Rocket Mortgage, and ASIC, that she simply did not know what caused the loss. She has no pictures, no logs, no evidence, and waited to contact both her insurance broker and lender of the alleged loss. If she did not know the cause of the loss three months after it occurred, and there have been no other discovered facts, there is no possible scenario where Hickcox could prove that a named peril covered by the California Fair Plan would have covered her loss, absent conclusory allegations and hypothetical guesses. That is not enough to meet the burden of proof to establish a loss by a named peril.

The fact that her claim was covered by the ASIC policy left her in a much better position than had her California Fair Plan policy been active. As such, Plaintiff does not have a concrete injury.

### III.    Hickcox Cannot State a Claim Under RESPA or California Financial Code § 50505.

The Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank") transferred rulemaking authority under RESPA to the Consumer Financial Protection Bureau ("CFPB"). Pub. L. No. 111–203, § 1098, 124 Stat. 1376, 2104 (2010). The CFPB promulgated Regulation X, which sets out various regulations relating to mortgage servicing, among other things under 12 C.F.R. §§ 1024.17 and 1024.34. "If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the

- 14 -

disbursements in a timely manner." See, 12 C.F.R. § 1024.17(k). Here, it is not that Rocket Mortgage failed to make a timely payment; it simply paid the broker instead of the insurance company directly. The borrower, Hickcox, and her broker were aware of this, yet never said anything to Rocket Mortgage. Hickcox had an obligation under her Deed of Trust to advise Rocket Mortgage of non-payment notices, but simply ignored them. Now she seeks to sue Rocket Mortgage for failure to pay the premiums, knowing that Rocket Mortgage did pay the premiums. Further, the second lapse in her California Fair Plan policy was due to her own broker inputting the incorrect mortgagee clause in the application. Both Rocket Mortgage and California Fair Plan reached out to Hickcox on multiple occasions, but she again ignored the correspondence. Further, her attorney provided her the correct mortgagee clause prior to filing this lawsuit, proving that Rocket Mortgage did not receive the notices, yet she still pursues a claim for the second lapse.

      **i.**      **Hickcox did not Suffer Actual Damages as a Result of a RESPA violation.**

"RESPA ... authorizes 'actual damages to the borrower *as a result of* the failure [to comply with RESPA requirements].' " *Hueso v. Select Portfolio Servicing, Inc.* (S.D. Cal. 2021) 527 F.Supp.3d 1210, 1223; citing, *Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (citing 12 U.S.C. § 2605(f)(1)(A)). Accordingly, "a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim." *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (citing cases).  A plaintiff must allege damages or a loss "related to the RESPA violation itself," since RESPA, as codified at section 2605(f)(1)(A), authorizes "actual damages to the borrower as a result of the failure [to comply with RESPA requirements]." *Lal*, 680 F. Supp. 2d at 1223. [A] critical element when bringing a RESPA claim" is the "causal connection" between the "actual damages" and the RESPA violation. *Read v. Cenlar FSB* (C.D. Cal., Sept. 30, 2021, No. EDCV21504JGBSPX) 2021 WL 6618659, at *6; citing *Moore v. Wells Fargo Bank, N.A.,* 908 F.3d 1050, 1058 (7th Cir. 2018). "The Court must first determine whether Plaintiff alleges that Defendant failed to comply with RESPA, and second whether actual damages resulted from the violation."

      Here, for Hickcox to establish damages related to Rocket Mortgage allowing her California Fair Plan to lapse, she would have to prove that California Fair Plan would have

- 15 -

covered her loss. But as established above, Hickcox has absolutely no proof that her loss was covered by a named peril under the Fair Plan policy. Instead, she admittedly thought it was weight of snow, and the evidence of a large snow storm corroborates that. Other than that, she told her broker and Rocket Mortgage that she had no idea what caused the loss, and stated that "no one could". If no one can establish the loss, then there is no possible way that she can prove it was the result of a named peril under the California Fair plan. More importantly, due to the high amount of precipitation, the loss could not have been from windstorm.

But for arguments sake, assume it was a windstorm. The only statement made to anyone that actually inspected the property in person was that it was caused by wind knocking over a tree on to the deck. In other words, an indirect loss from windstorm. That type of loss would not have been covered under Hickcox's Fair Plan policy. And now Hickcox states in her declaration in support that she never told anyone that a tree fell on her deck. On the one hand she advocates that ASIC admits that it was a windstorm loss in its report, yet asserts that the report is inaccurate when it states facts that do not support her narrative. Like that a tree fell on her deck, and that there was no personal property damage, and that there was no interior damage.

### ii.    Rocket Mortgage did not Admit to a Covered Loss.

Plaintiff takes the position in her Motion for Summary Judgment that Rocket Mortgage admitted to a covered loss. She reasons that because certain claim forms say wind or windstorm that somehow Rocket Mortgage admitted to the loss. But that couldn't be further from the Truth. Rocket Mortgage did not investigate or adjust the loss. ASIC, the insurer did that. And based on the insurer's investigation and discussion with Hickcox, it determined that wind knocked over a tree onto her deck.

However, now that Rocket Mortgage is being sued because Hickcox is not happy with her insurance settlement, it must conduct an independent review, denovo. And after being privy to facts that the adjuster did not have, Rocket Mortgage does not believe that Hickcox's claim would have been covered by California Fair Plan. Specifically, when the lost first occurred, Hickcox claimed it to be from weight of snow. This makes sense because there was a serious snowstorm. Only after her claim was denied did she conjure up the wind loss theory. Importantly, she never

advised Rocket Mortgage, ASIC/Assurant, or the outside adjuster that snow might have been a fact. In fact, she concealed anything related to weight of snow.

Further, any claim form or submission that states "windstorm" was only because that's what Hickcox was telling Rocket Mortgage and ASIC/Assurant. But Rocket Mortgage certainly did not admit to the loss being as such. Moreover, it was not Rocket Mortgage's duty to determine the cause of loss. It is not an insurance company, and it is the specific reason why it set up a policy to be applied retroactively to adjust Hickcox's loss.

**iii.    Rocket Mortgage did not Cause the Second Lapse in Coverage.**

Hickcox alleges that Rocket Mortgage allowed her California Fair Plan policy to lapse, once again, after it was set up in the fall of 2020. However, the evidence is abundantly clear that Hickcox's agent copy and pasted her original 2019 application, without making note of the change to the mortgagee clause. Rocket Mortgage never received those notices. Further, Rocket Mortgage was sending notices directly Hickcox advising that they did not have proof of hazard insurance and that they were gong to purchase a policy on her behalf, yet she ignored the correspondence. Additionally, California Fair Plan advised Hickcox directly that their notices were rejected and asked her to double check the mortgagee clause, to no avail.

**iv.    Plaintiff's Complaint is Devoid of Allegations Surrounding 12 U.S.C. § 2605(k).**

Plaintiff's Motion for Summary is devoid of any allegations surrounding this subsection of RESPA. Plaintiff's Complaint never mentions that Rocket Mortgage improperly set up a force-placed insurance policy. Rather, Plaintiff alleged that Rocket Mortgage failed to timely and adequately pay premiums for a policy.  Plaintiff cannot now bring up this claim in her Motion for Summary Judgement. Additionally, the undisputed facts show that Hickcox agreed to the first lender placed policy so that it could retroactively adjust her loss. The second lender placed policy was duly implemented because Hickcox failed to respond to notices to provide proof of hazard insurance. As such, Plaintiff's claim under this subsection fails.

PH 1498106.1

    **v.**    **Because Plaintiff cannot State a Claim Under RESPA, there is no Claim for Violations of California Financial Code §50505.**

This code holds that any person who violates any provision of RESPA violations this division. Fin. Code, § 50505. For the reasons stated above, because Rocket Mortgage did not violate RESPA, it cannot violate §50505

## IV.    Plaintiff Failed to State a Claim for Breach of Fiduciary Duty.

To establish a breach of fiduciary duty, a plaintiff must show "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Second Measure, Inc. v. Kim* (N.D. Cal. 2015) 143 F.Supp.3d 961, 979.  While the law may provide a fudiciary duty to a lender that is escrowing insurance payments, Plaintiff cannot establish any damage proximately caused by the breach. For the reasons argued above, Plaintiff benefitted from the breach. ASIC retroactively adjusted Hickcox's loss, and paid for a claim that would never have been covered under California Fair Plan. As such, Plaintiff's Claim fails.

## V.    Conclusion.

Rocket Mortgage may have inadvertently, failed to pay the California Fair Plan directly at closing. However, it cured its error by having ASIC establish a policy and retroactively adjust the claim. Plaintiff was not damaged whatsoever, and actually benefitted from the error because her loss would not have been covered by California Fair Plan. Moreover, there is no possible way that Plaintiff could establish that a loss was covered by a named peril under any policy. ASIC/Assurant basically took Hickcox's word for the cause of the loss due to the circumstances, and trying to protect the collateral of its well established business partner. But had ASIC's adjuster been privy to all of the underlying facts, he might have determined a different cause of loss. It's of no consequence because weight of snow and falling objects is covered under the ASIC policy. Therefore, Plaintiff was essentially enriched by benefits she would not have otherwise received had the California Fair Plan policy been intact. Further, the ASIC policy was less expensive, than her fair plan policy.

Last, the Second Lapse in policy was due to Hickcox, and her broker's, own fault. Her broker set up a policy with the wrong mortgagee clause, and Hickcox ignored repeated notices

PH 1498106.1

from Rocket Mortgage and California Fair Plan. As such, no claim exists.

WHEREFORE, Rocket Mortgage LLC respectfully requests that Summary Judgment be entered in its favor, and against Plaintiff, and that the Court award any other relief deemed appropriate.

Dated: April 6, 2023.

**SPENCER FANE LLP**

*/s/ J. Kirby McDonough*
J. Kirby McDonough
California Bar No. 275705
201 N. Franklin St., Suite 2150
Tampa, FL 33602
Telephone: 813-424-3501
kmcdonough@spencerfane.com

*Attorney for Defendant*
*Rocket Mortgage, LLC*

– 19 –

PH 1498106.1