UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE HICKCOX, | No. 2:22-cv-00437-TLN-KJN |
| Plaintiff, | |
| v. | **ORDER** |
| ROCKET MORTGAGE, LLC, | |
| Defendant. | |

This matter is before the Court on Plaintiff Nicole Hickcox ("Plaintiff") and Defendant Rocket Mortgage, LLC's ("Defendant") Cross-Motions for Summary Judgment.  (ECF Nos. 32, 39.)  Both motions have been fully briefed.  For the reasons set forth below, the Court hereby DENIES Plaintiff's motion (ECF No. 32) and DENIES in part and GRANTS in part Defendant's motion.  (ECF No. 39.)

///

///

///

///

///

///

///

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises out of a dispute regarding home insurance coverage.  On October 15, 2019, Plaintiff executed a promissory note in favor of Defendant, in the amount of $171,762 (the "Note") to refinance real property located at 4371 Park Woods Dr., Pollock Pines, California, 95726 (the "Property").  (ECF No. 41-1 at 2.)  That same day, Plaintiff executed and granted a Deed of Trust in favor of Defendant on the Property to secure payment for the Note.  (*Id.*)  The Note and Deed of Trust will be collectively referred to as the "Refinance Loan."  (*Id.*)  Defendant is the originator and servicer of the Refinance Loan.  (*Id.*)

The Deed of Trust requires Plaintiff to maintain hazard insurance on the Property.  (*Id.*)  In July 2019, prior to closing the Refinance Loan, Plaintiff obtained two different hazard insurance policies: one from California Fair Plan ("CFP") and one from California State Automobile Association ("CSAA").  (*Id.* at 3.)  AAA acted as Plaintiff's broker.  (*Id*. at 5.)  The Deed of Trust also requires Defendant to hold Plaintiff's funds in escrow for the purpose of paying insurance premiums as they come due.  (*Id.* at 2–3.)  Defendant acts as a fiduciary of this escrow account.  (ECF No. 39-6 at 2.)

When Defendant originated the Refinance Loan in its system, Defendant incorrectly inputted the CSAA policy as the top line policy.  (ECF No 41-1. at 4–5.)  If the policies had been put into Defendant's system correctly, the CSAA payment would have been sent to AAA, while the CFP payment would have gone to CFP directly.  (*Id.* at 5.)  Because the policies were entered into Defendant's system incorrectly, Defendant did not send CFP any money and instead sent AAA money for both the CFP policy and the CSAA policy.  (*Id.*)  When AAA received this overpayment, it issued Plaintiff a direct refund for the CFP policy amount but did not notify Defendant of the mistake.  (*Id.* at 6.)  Due to Defendant's failure to pay the CFP premium, the policy lapsed in January 2020.  (ECF No. 39-6 at 7.)

On March 16, 2020, Plaintiff suffered damage to the exterior deck of her home (the "Loss").  (ECF No. 41-1 at 6.)  The parties dispute the specific cause of the Loss.  (*See* ECF No.

---

[1]     The following facts are undisputed unless otherwise indicated.

39-6 at 7; ECF No. 41-1 at 6–7.)  Plaintiff asserts a windstorm caused the Loss, while Defendant claims the Loss was due to heavy snow and/or record precipitation.  (ECF No. 39-6 at 7.)  The parties agree the CFP policy, if in place, would have covered the property damage if the Loss was due to a "windstorm."  (*Id.* at 2.)  However, the parties dispute what qualifies as a "windstorm." (*Id.* at 2–3.)  Plaintiff contends the CFP policy would cover the Loss if "the cause is wind, whether or not there is precipitation."  (*Id.*)  Defendant disagrees and argues a "windstorm" is only present if there is "little to no precipitation."  (*Id.*)

Around June 2020, Plaintiff told Defendant about the Loss and that the CFP policy was not active at the time of the Loss.  (*Id.* at 8.)  In response, Defendant contacted Assurant, Defendant's exclusive provider of lender-placed policies, to purchase hazard insurance on Plaintiff's behalf that would retroactively cover the Loss.  (*Id.* at 9, 15.)  Defendant purchased a policy through Assurant to adjust Plaintiff's otherwise uninsured Loss and billed Plaintiff in the amount of $1,206 from her impound account to pay for the policy.  (*Id.* at 9.)  The Assurant policy provided coverage for the repair of damage to Plaintiff's home but did not provide coverage for contents or loss of use.  (*Id.* at 10.)  Assurant investigated Plaintiff's claim and decided to retroactively cover the Loss in the amount of $5,170.33.  (ECF No. 41-1 at 12–13.)

Following the close of Assurant's retroactive policy, Plaintiff renewed her CFP policy in October 2020.  (ECF No. 41-1 at 12.)  Plaintiff's AAA broker sent the renewed application on Plaintiff's behalf.  (*Id.* at 13.)  However, Plaintiff's broker did not update the application to reflect Defendant's new address on the application's mortgagee clause.  (*Id.*)  The new policy therefore lapsed again due to failure to pay.  (*Id.*)  Defendant subsequently notified Plaintiff it would purchase hazard insurance on her behalf because the CFP policy expired.  (ECF No. 39-6 at 14.)  Accordingly, on December 13, 2021, after two prior notices, Defendant sent Plaintiff a notice of force-placed insurance.  (ECF No. 44-1 at 14.)

On March 8, 2022, Plaintiff filed this action against Defendant alleging: (1) violations of 12 U.S.C. § 2605 ("§ 2605") of the Real Estate Settlement Procedures Act ("RESPA") and California Financial Code § 50505; (2) breach of fiduciary duty; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; and (5) negligence.  (ECF No. 1.)  Plaintiff moved

1   for partial summary judgment on the RESPA and breach of fiduciary duty claims and voluntarily

2   dismissed all remaining claims.[2]  (ECF Nos. 32, 33.)  Defendant opposed Plaintiff's motion and

3   filed a countermotion for summary judgment.  (ECF No. 39.)

4       **II.      STANDARD OF LAW**

5       Summary judgment is appropriate when the moving party demonstrates no genuine issue

6   of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

7   R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

8   judgment practice, the moving party always bears the initial responsibility of informing the

9   district court of the basis of its motion, and identifying those portions of "the pleadings,

10  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

11  which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.

12  Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

13  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

14  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

15  324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

16  party who does not make a showing sufficient to establish the existence of an element essential to

17  that party's case, and on which that party will bear the burden of proof at trial.

18      If the moving party meets its initial responsibility, the burden then shifts to the opposing

19  party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.

20  Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.

21  Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,

22  the opposing party may not rely upon the denials of its pleadings but is required to tender

23  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

24  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

25  demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

26  _____

27  [2]      The Court does not address the California Financial Code § 50505 claim herein because it
    is entirely derivative of the RESPA claim and the parties do not raise arguments specific to
    § 50505.  *See* Cal. Fin. Code § 50505 ("Any person who violates any provision of [RESPA]

28  violates this division.").

suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

///

///

///

///

///

1    **III.  ANALYSIS**

2          Both parties move for summary judgment as to Plaintiff's remaining claims for: (1)

3    violations of RESPA; and (2) breach of fiduciary duty.  (ECF Nos. 32, 39.)  The Court interprets

4    Plaintiff's claims to refer to two distinct lapses of the CFP coverage.  The first lapse took place in

5    January 2020, and the second lapse took place in October 2021.  (ECF No. 32-1 at 12.)  The

6    Court will address the two lapses in turn.

7                          A.    First Lapse

8          As to the first lapse, Plaintiff's allegations pertain to two subsections of RESPA, namely

9    § 2605(g) and (k).[3]  The Court will address these subsections separately.

10                          *i.   12 U.S.C. § 2605(g)*

11         RESPA imposes certain statutory responsibilities on loan servicers regarding borrowers'

12   accounts.  *See generally* 12 U.S.C. § 2605.  A mere procedural violation of RESPA is not

13   actionable.  Instead, plaintiffs bringing a claim under RESPA must show the statutory violation

14   caused actual injury.  12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this

15   section shall be liable to the borrower for . . . (A) any actual damages to the borrower as a result

16   of the failure . . . .").  In other words, actual harm caused by RESPA noncompliance is a required

17   element.  *Read v. Cenlar FSB*, No. EDCV 21-504 JGB, 2021 WL 6618659, at *8 (C.D. Cal. Sept.

18   30, 2021) (citing *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1059 (7th Cir. 2018)).  Thus,

19   the Court must determine: (1) whether there is a statutory violation based on Defendant's failure

20   to comply with RESPA; and (2) whether actual damages resulted from the violation.  *Id.* at *6.

21                          a)   Statutory Violation

22         Under RESPA, where the terms of a loan require the borrower to make payments into an

23   escrow account for insurance premiums, "the servicer shall make payments from the escrow

---

[3]      Defendant argues the complaint is "devoid of allegations surrounding 12 U.S.C. §
2605(k)."  (ECF No. 39-1 at 17.)  The Court disagrees.  While Plaintiff could have been clearer,
Plaintiff broadly labeled her first claim as "Violations of 12 U.S.C. § 2605."  (ECF No. 1 at 5.)
Within the claim, Plaintiff states she was harmed by "imposition of an expensive and inadequate
force placed insurance policy . . . ."  (*Id.*)  Considering Plaintiff's allegations about force-placed
insurance, the Court finds Defendant was on sufficient notice that Plaintiff's claims may
implicate § 2605(k).

1   account for such . . . insurance premiums . . . in a timely manner as such payments become due."

2   12 U.S.C. § 2605(g); *Veloz v. Green Tree Servicing LLC*, No. CV-13-00915-PHX-DGC, 2014

3   WL 2215866, at *4 (D. Ariz. May 29, 2014).

4        Plaintiff moves for summary judgment for the first lapse because Defendant admits it did

5   not pay the CFP policy's premium as required by statute.  (ECF No. 32-1 at 13.)  Defendant

6   maintains it did pay the premium, but simply paid the wrong entity.  (ECF No. 39-6 at 6.)  Instead

7   of paying CFP directly, Defendant paid Plaintiff's broker, AAA.  (*Id.*)  Defendant also argues

8   Plaintiff and her AAA broker received notices of nonpayment from CFP and did not forward

9   them to Defendant.  (*Id.*)  Defendant asserts by failing to bring these notices to Defendant's

10   attention, Plaintiff breached her obligations under the Deed of Trust.  (*Id.*)

11        Defendant's arguments are unpersuasive.  It is undisputed that Defendant was responsible

12   for paying Plaintiff's CFP premiums out of the designated escrow account and ultimately failed to

13   do so.  (ECF No. 39-6 at 4; ECF No. 41-1 at 2–3.)  Defendant fails to cite any authority to support

14   the proposition that paying Plaintiff's broker relieves it from liability.  Defendant also fails to cite

15   any authority explaining how Plaintiff's purported obligations under the Deed of Trust impact

16   Defendant's liability under RESPA.  Therefore, based on the undisputed fact that Defendant

17   failed to pay the CFP insurance premiums and in the absence of meaningful argument from

18   Defendant on this issue, the Court concludes Defendant violated § 2605(g).

19                              b)   Actual Damages

20        The parties next dispute the existence of actual damages related to the first lapse.  Plaintiff

21   asserts she suffered actual damages because the CFP policy, if in place, would have covered the

22   Loss.  (ECF No. 32-1 at 13–14.)  Defendant disagrees and asserts Plaintiff suffered no actual

23   harm following Defendant's failure to pay CFP.[4]  (ECF No. 39-1 at 15.)  Although the parties'

24

---

25   [4]     It appears Defendant uses similar reasoning to argue Plaintiff fails to show actual damages
     under RESPA and Article III standing.  (ECF No. 39-1 at 2.)  Article III standing and actual

26   damages under RESPA are usually distinct issues that are addressed separately.  *Read*, 2021 WL
     6618559, at *3 (quoting *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal.

27   2015)).  However, because Defendant's arguments as to Article III standing and actual damages
     overlap in the instant case, the Court will address these arguments together.

28

1   arguments lack clarity, the Court gleans two main arguments from the briefing on this issue: (1)

2   whether Assurant's payment made Plaintiff whole; and (2) whether the CFP plan would have

3   covered the Loss.

4          First, Defendant argues Assurant's payment for the Loss "made Plaintiff whole." (*Id.* at

5   12.)  To rebut Defendant's argument, Plaintiff claims there is "undisputed proof [Plaintiff]

6   suffered uncompensated losses because of [Defendant's] serial violations of RESPA,[5] related

7   California law, and its fiduciary duty."  (ECF No. 41 at 8.)  In support, Plaintiff cites to her

8   declaration where she attests she suffered "more than $10,000 to [her] contents[6] and more than

9   $75,000 in damage to the home."  (*Id.* at 6.)

10          Plaintiff's self-serving declaration ordinarily would be insufficient to create a genuine

11   issue of material fact.  *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)

12   (discussing a "conclusory, self-serving affidavit, lacking detailed facts and any supporting

13   evidence, is insufficient" to survive summary judgment).  However, additional undisputed facts

14   add weight to Plaintiff's argument and create a triable issue regarding damages.  Specifically,

15   Defendant admits Assurant's retroactive policy did not afford coverage for contents or loss of use.

16   (ECF No. 39-6 at 10.)  Further, Defendant's Person Most Knowledgeable, Sadaiah Wourman,

17   admitted in her deposition that the CFP policy afforded coverage for contents and loss of use

18   while the Assurant policy did not.  (ECF No. 32-4 at 102.)  This evidence creates at the very least

19   a reasonable inference that Plaintiff would have recovered more under the CFP policy than she

20   did under the Assurant policy.

21          In addition, Plaintiff alleges she suffered "substantial stress, upset, and financial worry" as

22   a result of the CFP policy lapse.  (ECF No. 39-6 at 17.)  Without citing any authority, Defendant

23   asserts RESPA does not cover "that type of damage."  (ECF No. 42 at 6.)  However, courts have

24   _____

25   [5]       A plaintiff can recover statutory damages under RESPA if a "pattern or practice of
    noncompliance" is shown.  *See* 12 U.S.C. § 2605(f)(1)(B).  Plaintiff does not sufficiently address
26   whether she is seeking statutory damages for serial violations, and it is not apparent from the
    Complaint.

27   [6]       Plaintiff uses the words "contents" and "personal property" interchangeably.  (*See* ECF
28   No. 39-6 at 7–8.)

8

1    broadly interpreted RESPA's "actual damages" requirement to include mental distress damages.

2    *Veloz*, 2014 WL 2215866, at *3 (denying summary judgment because the plaintiff alleged mental

3    distress due to the defendant's RESPA violation); *Craig v. Capital One, N.A.*, 2018 WL 5857987,

4    at *6 (C.D. Cal. Apr. 10, 2018) (finding emotional distress damages recoverable so long as they

5    are causally connected to the RESPA violation).  Thus, Plaintiff's potential mental distress

6    damages as well as Assurant's limited coverage creates a triable issue as to whether Assurant's

7    payment alone made Plaintiff whole.

8          Second, the parties dispute whether the CFP policy would have covered the Loss.  (ECF

9    No. 39-1 at 13.)  Plaintiff contends a windstorm caused the Loss, which would have been covered

10   by the CFP policy.  (ECF No. 39-6 at 7.)  To support this contention, Plaintiff cites her

11   declaration, in which she states "[i]n March 2020 my home was damaged due to a windstorm."

12   (ECF No. 32-4 at 67.)  Plaintiff also cites to Assurant's claim payment letter, which expressly

13   states the cause of the Loss was a windstorm.[7]  (*Id.* at 31.)

14          In response, Defendant contends heavy snow and/or record precipitation caused the Loss,

15   which would not have been covered by the CFP policy.  (ECF No. 39-6 at 7.)  In support,

16   Defendant cites a local newspaper article printed on March 18, 2020, that discussed a winter

17   storm that occurred in Plaintiff's community around the time of the Loss.  (*See* ECF No. 39-3 at

18   168–70.)  Defendant argues the Loss was not caused by a windstorm because dictionaries define

19   "windstorm" as "a storm with high winds but little to no rain."  (ECF No. 39-1 at 13.)  Defendant

20   also contends Plaintiff herself originally admitted she did not know the cause of the Loss and

21   cannot prove such cause because she has no pictures, logs, or other relevant evidence.  (*Id.* at 14;

22   ECF No. 39-6 at 7.)  Lastly, Defendant asserts even if wind contributed to the Loss, it was an

23   indirect cause and thus not covered under the CFP policy.  (ECF No. 39-1 at 14.)

24   ///

25   _____

26   [7]    Plaintiff further asserts that Defendant adopts this conclusion as Assurant's principal.
     (ECF No. 32-1 at 15.)  While the parties dispute the nature of Defendant and Assurant's
27   relationship, Plaintiff maintains Assurant was Defendant's agent.  (ECF No. 41-1 at 9.)  Plaintiff
     does not cite authority to convince the Court that Defendant should be held to Assurant's
28   conclusions as a matter of law.

1    Summary judgment is not the appropriate vehicle to resolve this factual dispute.

2  *Anderson*, 477 U.S. at 250.  Moreover, whether a plaintiff's insurance policy would have covered

3  the damage suffered is a question best left to the jury.  *Indian Harvest Specialtifoods, Inc. v.*

4  *Westchester Fire Ins. Co*., 2005 WL 1925901, at *7 (E.D. Cal. Aug. 11, 2005) (denying summary

5  judgment because determining whether plaintiff's loss is covered by an insurance policy is a jury

6  question); *Garvey v. State Farm Fire & Cas. Co.*, 770 P.2d 704, 714 (Cal. 1989) (holding the

7  ultimate question of insurance coverage should be determined by a jury).

8    In sum, although the Court concludes that Defendant violated § 2605(g) by failing to pay

9  the CFP policy premium, there are triable issues as to whether Plaintiff suffered actual damages

10  because of Defendant's statutory violation.  Therefore, the Court DENIES both parties' motions

11  for summary judgment as to Plaintiff's § 2605(g) claim for the first lapse.

12                    *ii.   12 U.S.C. § 2605(k)*

13    RESPA also governs the implementation of force-placed hazard insurance.  *See* 12 U.S.C.

14  § 2605(k).  Force-placed insurance is hazard insurance coverage obtained by a servicer when the

15  borrower fails to maintain insurance on a property as required by the terms of the loan.  12 U.S.C.

16  § 2605(k)(2).  Under RESPA, servicers are prohibited from obtaining force-placed insurance

17  "unless there is a reasonable basis to believe the borrower has failed to comply with the loan

18  contract's requirements to maintain property insurance."  12 U.S.C. § 2605(k)(1); *Hueso v. Select*

19  *Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1225 (S.D. Cal. 2021).

20    Even if a servicer has no "reasonable basis" for implementing force-placed insurance, a

21  plaintiff must still show actual damages caused by the force-placed policy.  *Craig*, 2018 WL

22  5857987, at *5.  If a servicer fails to refund all force-placed insurance premium charges and

23  related fees, courts have found the actual damages requirement satisfied.  *See Hueso*, 527 F.

24  Supp. 3d at 1226; *Ikeda v. S.F. Fireman Credit Union*, No. 20-cv-08071-TSH, 2021 WL

25  4776705, at *13 (N.D. Cal. Oct. 13, 2021).

26    Thus, like Plaintiff's § 2605(g) claim, the Court must determine: (1) whether Defendant

27  failed to comply with RESPA; and (2) whether actual damages resulted from the violation.

28  *Craig*, 2018 WL 5857987, at *5.

a) Statutory Violation

Plaintiff moves for summary judgment as to § 2605(k) because Defendant wrongfully purchased force-placed insurance on her behalf following the first lapse. (ECF No. 32-1 at 12.) Specifically, Plaintiff argues Defendant used Plaintiff's escrow funds to purchase Assurant's retroactive policy "without any reasonable basis to believe Plaintiff failed to comply with her obligation to maintain property insurance." (*Id.*) Plaintiff claims since Defendant was responsible for Plaintiff's uninsured status due to its violation of § 2605(g), it was not proper for Defendant to buy the force-placed policy. (*Id.*) In response, Defendant maintains the Deed of Trust permits Plaintiff's hazard policy to be paid from her escrow account. (ECF No. 42 at 7.) Defendant also asserts Plaintiff agreed to Defendant's purchase of the Assurant policy to retroactively cover the Loss. (ECF No. 39-1 at 17.)

While there is evidence suggesting Plaintiff consented to Defendant purchasing the Assurant policy (*see* ECF No. 39-3 at 52), neither party provides authority or meaningful argument about how such consent — or the Deed of Trust — impacts Defendant's liability under RESPA. Further, Defendant provided no evidence showing it had a "reasonable basis" for implementing the force-placed policy as required by statute. A "reasonable basis" exists only if the servicer has sent, by first-class mail, two written notices thirty days apart to the borrower containing reminders that the borrower must carry hazard insurance. 12 U.S.C. § 2605(l)(1). Fifteen days after the second written notice, the servicer can implement a force-placed policy. *Id*. The parties do not supply any evidence showing Defendant complied with the requisite statutory procedure to establish a "reasonable basis." *See* 12 U.S.C. § 2605(l)(1).

Therefore, the Court concludes Defendant's implementation of the Assurant policy after the first lapse failed to comply with § 2605(k).

b) Actual Damages

Plaintiff maintains the loss of her escrowed funds is enough to satisfy the actual damages requirement. (ECF No. 32-1 at 12.) In response, Defendant contends Plaintiff suffered no pecuniary loss because she was required to have hazard insurance on the property and Assurant's policy was cheaper than the CFP policy. (ECF No. 42 at 6–7.)

11

1        Generally, when a plaintiff asserts loss of escrow funds as actual damages, the plaintiff

2   can show the force-placed policy was unnecessarily implemented.  *See Hueso*, 527 F. Supp. 3d at

3   1225 (finding the plaintiff's § 2605(k) claim actionable because the lender force-placed a policy

4   using plaintiff's escrow funds even though plaintiff maintained his own property insurance).  In

5   the instant case, it is undisputed Plaintiff did not have insurance when Defendant imposed

6   Assurant's policy after the first lapse.  (ECF No. 39-6 at 9.)  Plaintiff fails to cite authority or

7   adequately explain how she was damaged considering Plaintiff needed to maintain hazard

8   insurance and the Assurant policy was less expensive than the CFP policy.  (ECF No. 41-1 at 2;

9   ECF No. 39-6 at 9; ECF No. 32-3 at 63.)  Based upon the record before the Court, there is no

10   evidence to suggest Plaintiff suffered damages related to this statutory violation.

11        In sum, although the Court concludes Defendant did not comply with § 2605(k) after the

12   first lapse, Plaintiff failed to create a triable issue as to whether she suffered actual damages as a

13   result.  Accordingly, the Court GRANTS Defendant's motion for summary judgment as to

14   Plaintiff's § 2605(k) claim related to the first lapse.

15             B.   <u>Second Lapse</u>

16        Plaintiff renewed the CFP policy in late 2020, and the second lapse occurred in 2021.

17   (ECF No. 39-6 at 12–13.)  Like the first lapse, Plaintiff argues Defendant is liable for the second

18   lapse based on violations of § 2605(g) and (k).  (ECF No. 32-1 at 12.)  However, the only actual

19   damages Plaintiff claims resulted from the second lapse are the loss of escrow funds Defendant

20   used to purchase a force-placed policy.  (*Id.*)  In other words, the only actual damages Plaintiff

21   claims for the § 2605(g) violation was the loss caused by the § 2605(k) violation.  Therefore, the

22   Court begins by addressing whether Defendant violated § 2605(k).

23        Plaintiff argues Defendant violated § 2605(k) because Defendant had no reasonable basis

24   to believe Plaintiff failed to comply with her obligation to maintain property insurance.  (ECF No.

25   32-1 at 12.)  Defendant disagrees and argues the force-placed policy was "duly implemented

26   because [Plaintiff] failed to respond to notices to provide proof of hazard insurance."  (ECF No.

27   39-1 at 17.)

28   ///

1    The Court agrees with Defendant that undisputed evidence establishes that Defendant

2    properly implemented the force-placed policy.  As an initial matter, it is undisputed that "[o]n

3    December 13, 2021, Rocket Mortgage sent to [Plaintiff] a Notice of Lender-Placed Insurance, and

4    advis[ed] that despite the two prior notices it did not have proof of hazard insurance and

5    purchased a plan."  (ECF No. 41-1 at 14.)  A closer examination of the evidence reveals

6    Defendant's notices complied with § 2605(k) and Defendant thus had a "reasonable basis" for

7    implementing the force-placed policy.  Specifically, Defendant's Exhibit J, K, and L reveal

8    Defendant sent Plaintiff two notices on September 27 and November 1, 2021, respectively.  (ECF

9    No. 39-3 at 98–105.)  Defendant subsequently informed Plaintiff in writing of Defendant's

10   decision to implement a force-placed policy on December 13, 2021.  (*Id.* at 106–09.)  The two

11   notices had "Lender Placed Hazard Reminder Letter" written in large font at the top of the forms,

12   and the December 13, 2021 letter clearly stated "Lender Placed Hazard Policy."  (*Id*. at 98–109.)

13   The notices indicated Plaintiff's required insurance had expired and Defendant had no evidence

14   Plaintiff obtained new coverage.  (*Id.*)  The letters also clearly laid out how Plaintiff was to

15   inform Defendant if she obtained new coverage, and that Defendant planned to buy insurance for

16   Plaintiff if Plaintiff failed to do so.  (*Id.*)  Over thirty days passed between the two notices, and

17   fifteen days elapsed before Defendant implemented the force-placed policy.  (*Id.*)

18        Based upon the record before the Court, Defendant had a "reasonable basis" for

19   purchasing the force-placed policy.  The notices provided all relevant information as required by

20   statute.  *See* 12 U.S.C. § 2605(l)(1).  Defendant also complied with the statute's temporal

21   requirements.  *Id.* (stating thirty days must elapse between notices, and fifteen days must elapse

22   thereafter before lender can force-place a policy).

23        Because the Court concludes Defendant complied with § 2605(k)'s statutory

24   requirements, the Court need not and does not consider the question of actual damages for the

25   § 2605(k) violation.  This conclusion is also fatal to Plaintiff's § 2605(g) claim, which hinges on

26   the existence of a § 2605(k) violation.  Accordingly, Defendant's motion for summary judgment

27   is GRANTED as to Plaintiff's RESPA claims related to the second lapse.

28   ///

13

1
           C.        <u>Breach of Fiduciary Duty</u>

2
       "To state a claim for breach of fiduciary duty, a plaintiff must show: (1) the existence of a

3
fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused by

4
the breach." *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1152 (E.D. Cal. 2010) (citing

5
*Roberts v. Lomanto*, 112 Cal. App. 4th 1553, 1562 (2003)).  Generally, "[a]bsent 'special

6
circumstances,' a loan transaction 'is at arms-length and there is no fiduciary relationship

7
between the borrower and lender.'"  *Swanson v. EMC Mortg. Corp.*, No. CV F-09-1507 LJO

8
DLB, 2009 WL 3627925, at *5 (E.D. Cal. Oct. 29, 2009) (citations omitted).

9
       Despite this general rule, it is undisputed Defendant acted as a fiduciary as it relates to

10
Plaintiff's escrow account funds.  (*See* ECF No. 39-6 at 2.)  Instead, the parties' arguments

11
pertaining to this claim appear to be entirely derivative of their RESPA arguments.  The parties

12
do not discuss nor cite any authority regarding Defendant's breach of such fiduciary duty.

13
Moreover, the Court has found triable issues as to whether Plaintiff suffered actual damages due

14
to Defendant's failure to comply with RESPA's statutory requirements relating to the first lapse.

15
       Accordingly, the Court DENIES both parties' motions for summary judgment as to

16
Plaintiff's breach of fiduciary duty claim.

17
///

18
///

19
///

20
///

21
///

22
///

23
///

24
///

25
///

26
///

27
///

28
///

1      **IV.**   **CONCLUSION**

2        For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Summary

3 Judgment (ECF No. 32) and GRANTS in part and DENIES in part Defendant's Motion for

4 Summary Judgment (ECF No. 39) as follows:

5       1.  Defendant's motion is GRANTED as to Plaintiff's § 2605(g) claim pertaining to the

6           second lapse, and as to the § 2605(k) claims pertaining to both the first and second

7           lapse; and

8       2.  Defendant's motion is DENIED in all other respects.

9        To summarize, Plaintiff's remaining claims are: (1) violation of 12 U.S.C. § 2605(g) as it

10 pertains to the first lapse; and (2) breach of fiduciary duty as it pertains to the first lapse.  The

11 parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing

12 date of this Order indicating their readiness to proceed to trial on Plaintiff's claims and proposing

13 trial dates.

14        IT IS SO ORDERED.

15 Date:  February 28, 2024

16

17                                 Troy L. Nunley

18                                 United States District Judge

19

20

21

22

23

24

25

26

27

28