IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA


NICOLE HICKCOX,                                    Case No.  2:22-cv-00437-TLN-KJN

                Plaintiff,

      v.

  ROCKET MORTGAGE, LLC.,

                Defendants.

_____/


# JURY INSTRUCTIONS

# GIVEN




_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

INSTRUCTION NO. 2

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

INSTRUCTION NO. 3

All parties are equal before the law and a limited liability company is entitled to the same fair and conscientious consideration by you as any party.

INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

      1. the sworn testimony of any witness;

      2. the exhibits that are admitted into evidence;

      3. any facts to which the lawyers have agreed; and

      4. any facts that I may instruct you to accept as proved.

INSTRUCTION NO. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, if some evidence was received only for a limited purpose and I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

INSTRUCTION NO. 6

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

INSTRUCTION NO. 7

There are rules of evidence that control what can be received into evidence. In the trial, when a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected. If I overruled the objection, the question was answered or the exhibit received. If I sustained the objection, the question could not be answered, and the exhibit could not be received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

INSTRUCTION NO. 8

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

INSTRUCTION NO. 9

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may have said something that was not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

INSTRUCTION NO. 10

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

INSTRUCTION NO. 11

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded and in some cases are videotaped.  When a person is unavailable to testify at trial, the deposition of that person may be used at trial.

Sadaiah Wourman's deposition was taken on January 12, 2023.  Christine Binder's deposition was taken January 9, 2023.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

INSTRUCTION NO. 12

The parties have agreed to certain facts that will be read to you.  You must therefore treat these facts as having been proved.

1.  Hickcox had a mortgage with Defendant Rocket Mortgage.

2.  The Rocket mortgage required Ms. Hickcox to maintain insurance on the Property.

3.  The Rocket mortgage required Ms. Hickcox to pay for her property insurance by making monthly payments into an impound account held by Rocket.

4.  Ms. Hickcox obtained property insurance with California FAIR Plan.

5.  The FAIR Plan policy covered damage to house and personal property due to windstorm.

6.  Rocket was required to pay the FAIR Plan premiums.

7.  Rocket failed to pay the Fair Plan premiums and for that reason the FAIR Plan policy was not in force in March 2020.

8.  On March 16, 2020, Plaintiff suffered a loss due to a snowstorm.

9.  On April 9, 2021, Ms. Hickcox was paid $5,170.33 for the loss.

10.  On or about July 2021, Ms. Hickcox submitted a preliminary estimate in the amount of $32,606.35.

11.  On or about January 20, 2022, Ms. Hickcox submitted a revised preliminary repair estimate in the amount of $63,273.44.

12.  At no point after April 4, 2021, did Rocket pay anything further for repair or damage.

INSTRUCTION NO. 13

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

1.  Rocket was the lender on Ms. Hickcox's loan.

2.  At the time of the closing of the loan Rocket was aware the property was insured by the California FAIR Plan Association.

3.  Rocket was aware it was obligated to make premium payments for Ms. Hickcox's FAIR Plan policy in 2019.

4.  On or about October 18, 2019, Rocket was informed by Ms. Hickcox's insurance agent, Patty Wilburn, that the premium for Plaintiff's FAIR Plan policy had not been paid.

5.  On or about October 18, 2019, Rocket's employee, Shun Jackson, responded to Ms. Wilburn's email, informing Ms. Wilburn that "The loan closed on the 15th and is scheduled to be disbursed on 10/21/19. This is why payment has not been received yet."

6.  Rocket did not pay any funds to California FAIR Plan for Ms. Hickcox's FAIR Plan Policy, with a premium amount due of $436.

7.  At the time of the Rocket loan closed Rocket did not pay any money to FAIR Plan for premiums for the FAIR Plan Policy.

8.  Ms. Hickcox informed Rocket of the loss at her house in or about June 2020.

9.  Ms. Hickcox informed Rocket in June of 2020 that her FAIR Plan policy was not in force at the time of the loss.

10.  On July 22, 2020, Rocket told Plaintiff that due to the expiration of her property insurance, it intended to purchase hazard insurance on her behalf.

11.  On August 10, 2020, Rocket told Ms. Hickcox that it had "cancelled all steps on our

end toward placing a policy on your loan."

12.  On or about August 18, 2020, Rocket told Ms. Hickcox that due to the expiration of her property insurance, it intended to purchase hazard insurance on her behalf.

13.  On or about August 28, 2020, Rocket told Ms. Hickcox that it had billed her escrow account $1,206 for purchase of an Assurant property insurance policy.

14.  On or after August 28, 2020, Rocket used $1,206 from Ms. Hickcox's escrow account to pay for the Assurant policy.

15.  Rocket was the named insured on the Assurant policy.

INSTRUCTION NO. 14

You have heard testimony from one or more expert witnesses who provided their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

INSTRUCTION NO. 15

You have heard evidence that the claimed loss may have been caused by a combination of covered and uncovered risks under the California FAIR Plan insurance policy. When a loss is caused by a combination of covered and excluded risks under the policy, the loss is covered only if the most important or predominant cause is a covered risk.

Under the California FAIR Plan policy, a loss caused by wind would have been covered, but a loss caused by weight of snow would not have been covered.  To succeed in her claims, Ms. Hickcox must prove that the most important or predominant cause of the loss was wind.

INSTRUCTION NO. 16

The Real Estate Settlement Procedures Act (RESPA), provides in pertinent part as follows:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

This Court has already found that Rocket Mortgage, LLC violated RESPA for its failure to pay Ms. Hickcox's California FAIR Plan insurance premiums from her escrow account.

For Ms. Hickcox to prevail on her RESPA claim, she must prove that Rocket Mortgage's violation (its failure to pay her California FAIR Plan insurance premiums) caused Ms. Hickcox actual damages.

INSTRUCTION NO. 17

When a mortgage company is a fiduciary on behalf of a borrower, it has a duty to act with the utmost good faith in the best interests of the borrower.  It has been established that Rocket Mortgage, LLC had a fiduciary relationship with Nicole Hickcox.

Nicole Hickcox claims that she was harmed by Rocket Mortgage, LLC's breach of the fiduciary duty to use reasonable care. To prevail on this claim, Ms. Hickcox must prove all of the following:

1.  That Rocket acted on Ms. Hickcox's behalf for purposes of paying for her property insurance from her impound account;

2. That Rocket failed to act as a reasonably careful mortgage company would have acted under the same or similar circumstances;

3. That Ms. Hickcox was harmed; and

4. That Rocket's conduct was a substantial factor in causing Ms. Hickcox's harm.

INSTRUCTION NO. 18

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for plaintiff on her claims, you must determine plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate plaintiff for any injury you find was caused by the defendant.  In determining the measure of damages, you should consider the following:

- The reasonable cost to repair the property,

- The reasonable cost to replace contents damaged in the loss, and

- Any compensation already received for the loss.

It is for you to determine what damages, if any, have been proved.  Your award must be based upon evidence, and not upon speculation, guesswork or conjecture.

INSTRUCTION NO. 19

If you decide that Ms. Hickcox is entitled to recover damages for past economic loss in one or more of the categories of damages that she claims, then you must decide whether she should also receive prejudgment interest on each item of loss in those categories.

Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict.

Whether Ms. Hickcox should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion. If you award these damages to Ms. Hickcox, you will be asked to address prejudgment interest in the special verdict form.

INSTRUCTION NO. 20

If you decide that Rocket Mortgage, LLC's conduct caused Nicole Hickcox harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Rocket Mortgage only if Ms. Hickcox proves that Rocket Mortgage engaged in that conduct with malice, oppression, or fraud. To do this, Ms. Hickcox must prove one of the following by clear and convincing evidence:

1.  That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Rocket Mortgage, who acted on behalf of Rocket Mortgage; or

2.  That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Rocket Mortgage; or

3.  That one or more officers, directors, or managing agents of Rocket Mortgage knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Rocket Mortgage acted with intent to cause injury or that Rocket Mortgage's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of the defendant's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Rocket Mortgage's conduct was despicable and subjected Ms. Hickcox to cruel and unjust hardship in knowing disregard of her rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Rocket Mortgage intentionally misrepresented or concealed a material fact and did so intending to harm Ms. Hickcox.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision making such that the employee's decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a)  How reprehensible was Rocket Mortgage's conduct? In deciding how reprehensible Rocket Mortgage's conduct was, you may consider, among other factors:

1.  Whether the conduct caused physical harm;

2.  Whether Rocket Mortgage disregarded the health or safety of others;

3.  Whether Ms. Hickcox was financially weak or vulnerable and Rocket Mortgage knew Ms. Hickcox was financially weak or vulnerable and took advantage of her;

4.  Whether Rocket Mortgage's conduct involved a pattern or practice; and

5.  Whether Rocket Mortgage acted with trickery or deceit.

(b)  Is there a reasonable relationship between the amount of punitive damages and Ms. Hickcox's harm or between the amount of punitive damages and potential harm to Ms. Hickcox that Rocket Mortgage knew was likely to occur because of its conduct?

(c)  In view of Rocket Mortgage's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award

above an amount that is otherwise appropriate merely because Rocket Mortgage has substantial financial resources. Any award you impose may not exceed Rocket Mortgage's ability to pay.

Punitive damages may not be used to punish Rocket Mortgage for the impact of its alleged misconduct on persons other than Ms. Hickcox.

INSTRUCTION NO. 21

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

INSTRUCTION NO. 22

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

INSTRUCTION NO. 23

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

• Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

• Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has

been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

INSTRUCTION NO. 24

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Court Security Officer, signed by the foreperson.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone, including me [Judge], how the jury stands, numerically or otherwise, on any question submitted to you, including the question of the liability of the defendants, until after you have reached a unanimous verdict or have been discharged.

INSTRUCTION NO. 25

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the Court Security Officer that you are ready to return to the courtroom.

INSTRUCTION NO. 26

If you decide to award prejudgment interest on economic damages (per Question 4 of the Verdict Form), calculate the award using a rate of 5% simple interest.

As previously instructed, if you award prejudgment interest, it should be computed from the date on which the loss incurred until the date on which you sign your verdict.

INSTRUCTION NO. 27

Since a request has been made for a readback of the testimony of Calvin Lech it will be provided to you, but you are cautioned that all readbacks run the risk of distorting the trial because of overemphasis of one portion of the testimony. The readback could contain errors. The readback cannot reflect matters of demeanor, tone of voice, and other aspects of the live testimony.  Your recollection and understanding of the testimony controls.  Finally, in your exercise of judgment, the testimony read cannot be considered in isolation but must be considered in the context of all the evidence presented.

INSTRUCTION NO. 28

You have now completed your jury service in this case. On behalf of all the judges of the court, please accept my thanks for your time and effort. Now that the case is over, you may choose whether or not to discuss the case and your deliberations with anyone. The lawyers in this case or their representatives may now talk to you about the case, including your deliberations or verdict. Those discussions must occur at a reasonable time and place and with your consent. Please immediately report to the court any unreasonable contact, made without your consent. Again, thank you for your service. You are now excused.